IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Beverly Mester,

       Plaintiff,       :    Case No. 2:21-cv-1741

   v.

McGraw Hill, LLC,                  Judge Sarah D. Morrison
                                      Magistrate Judge Chelsey Vascura
                                          :

       Defendant.

**OPINION & ORDER**

Defendant McGraw Hill moves to dismiss or stay Plaintiff Beverly Mester's employment discrimination and retaliation case, to compel arbitration, and for an order awarding its fees and costs in bringing the Motion. (ECF No. 5.) Ms. Mester Opposes (ECF No. 8) and McGraw Hill Replies. (ECF No. 10). Because McGraw Hill's Reply only addresses arguments made in Ms. Mester's Opposition, Ms. Mester's Motion for Leave to file a Surreply (ECF No. 12) is **DENIED**. For the reasons that follow, McGraw Hill's Motion to Dismiss (ECF No. 5) is **GRANTED** in part and **DENIED** in part.

    **I.**      **STANDARD OF REVIEW**

McGraw Hill utilizes Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6) to seek dismissal and arbitration without distinguishing between the two rules. The Sixth Circuit "considers a Rule 12(b)(1) motion to dismiss based on a failure to arbitrate as a motion to dismiss for failure to state a claim upon which relief may be granted."

*Nealy v. Shelly & Sands, Inc.*, 852 F. App'x 879, 881 (6th Cir. 2021) (citing *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)). *See also Baker v. Iron Workers Local 25 Vacation Pay Fund* , 999 F.3d 394, 400 (6th Cir. 2021) ("Because an arbitration agreement presents a reason to dismiss under 12(b)(6), not under 12(b)(1), the court should have dismissed the case for failure to state a claim.").

Where, as here, the parties proffer and rely upon matters outside of and not referred to in the pleadings, a motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, the standard applicable to motions for summary judgment is applied. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). *See also In re StockX Customer Data Sec. Breach Litig.*, No. 19-12441, 2020 U.S. Dist. LEXIS 241178, at *12 (E.D. Mich. Dec. 23, 2020) (applying Rule 56 standard of review to Rule 12(b)(6) motion to dismiss or compel arbitration without previous notice), aff'd by *In re StockX Customer Data Sec. Breach Litig.*, No. 21-1089, 2021 WL 5710939, at *6 (6th Cir. Dec. 2, 2021). Thus, the Court "views all facts and inferences drawn therefrom in the light most favorable to [Ms. Mester], and determine[s] whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Simons*, 288 F.3d at 889 (citation omitted).

## II.    BACKGROUND

McGraw Hill is a publishing and digital learning company. (ECF No. 7, PageID 22.) Ms. Mester is an Ohio resident who worked for McGraw Hill as a senior sales representative from 2007 until October 2020. (ECF No. 1.)

In December 2015, McGraw Hill sent an e-mail to all employees regarding the company's updated dispute resolution program called the Fast and Impartial Resolution Policy ("FAIR" or "Policy") that would become effective on January 1, 2016. (ECF No. 5-1, PageID 38; ECF No. 10-1 at ¶ 5; ECF No. 10-2, PageID 233-34.) The e-mail stated the Policy covered "certain employment-related disputes" such as "claims concerning . . . termination, . . . alleged discrimination, . . . and retaliation in the workplace." (ECF No. 10-2, PageID 233.) The Policy created a mandatory three-step procedure for covered claims: (1) meeting with Human Resources; (2) mediation; and (3) arbitration. *Id*. Each step would proceed only if the prior step failed. The e-mail states:

> Under the new FAIR program, subject to very limited exceptions, arbitration will be the sole, exclusive, and final remedy with respect to claims covered under FAIR. Accordingly, except as permitted by the new FAIR program or by law, neither you nor the Company will be permitted to pursue a court action (as an individual, in a representative capacity or as part of any collective or class) against the other.
>
> The new FAIR program is mutual, meaning that both you and the Company must follow the rules and procedures outlined in FAIR. Your continued employment after January 1, 2016, which is the effective date of the program, and/or the mutuality of the obligations for you and the Company under this program will constitute consideration for your rights and obligations under FAIR and consent by you and the Company to be bound by this program during your employment and after your employment ends.

3

. . .

> As part of the annual COBE [Code of Business Ethics] certification process in January 2016, you will need to acknowledge that you received the attached materials regarding FAIR.

(ECF No. 10-2, PageID 234.) The Policy and a summary of same were attached to the e-mail. (ECF No. 5-2; ECF No. 10-1 at ¶ 5; and ECF No. 10-2.)

COBE is McGraw Hill's annual online business ethics training course for education employees like Ms. Mester. (ECF No. 5-1 at ¶ 5.) COBE requires employees to agree with all of its provisions, of which FAIR is one, and to electronically certify their agreement to those provisions during COBE training. *Id*. at ¶ 6. COBE's "Welcome Page" states:

> You will see that all employees are being asked to acknowledge and agree, through their COBE affirmations, to resolve their employment-related disagreements with the company pursuant to the company's alternative dispute resolution program, called F.A.I.R. (Fast and Impartial Resolution). More details about F.A.I.R. have previously been provided to you.

(ECF No. 5-2, PageID 118.) Ms. Mester acknowledged her agreement to COBE's provisions in 2016, 2017, 2018, and 2019. (ECF No. 10-1 at ¶ 4.)

In August 2020, Ms. Mester sought and obtained leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, for anxiety. (ECF No. 1, ¶ 7.) COBE training for that year took place during her leave. (ECF No. 5-1, ¶ 8.) McGraw Hill terminated Ms. Mester during that leave. *Id*. at ¶ 10.

Ms. Mester's Complaint asserts claims for FMLA interference and retaliation as well as for disability discrimination and retaliation. (ECF No. 1.) McGraw Hill

4

moves to compel arbitration and to dismiss the case pursuant to the Policy's mandatory arbitration provision. (ECF No. 5.)

### III. ANALYSIS

**A. There is an Arbitration Agreement Between the Parties.**

Ms. Mester argues that she did not agree to the Policy so no arbitration agreement was ever formed. (ECF No. 8, PageID 136-138.) Thus, the question for the Court is whether the parties agreed to arbitrate. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). *See also Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530, 202 L. Ed. 2d 480 (2019).

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a written agreement to arbitrate disputes arising out of a transaction in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA establishes the following procedure for addressing motions to compel arbitration:

> A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order [compelling arbitration]. . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall . . . order . . . the parties to proceed to arbitration in accordance with the terms of the agreement. . . If the making of the arbitration agreement [is] in issue, the court shall proceed [to trial].

9 U.S.C. § 4. "In assessing whether an agreement to arbitrate has been made, . . . 'courts are to examine the language of the contract in light of the strong federal

5

policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.'" *Simons*, 288 F.3d at 889 (quoting *J.D. Byrider*, 228 F.3d at 714). McGraw Hill, as the party asserting the existence of an agreement to arbitrate, has the "burden to produce evidence that would allow a reasonable jury to find that a contract exists." *In re StockX Customer Data Sec. Breach Litig.*, 2021 WL 5710939, at *5 (citing *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011) and Fed. R. Civ. P. 56(a), (e)).

Under Ohio law,[1] "there must be a 'meeting of the minds' on the essential terms of the agreement . . . ." *Reedy v. Cincinnati Bengals, Inc.*, 143 Ohio App. 3d 516, 521, 758 N.E.2d 678, 682 (1st Dist. 2001); *see also De Angelis v. Icon Entm't Grp., Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019) (Marbley, J.). That is usually demonstrated by "offer, acceptance, and consideration." *N. Side Bank & Tr. Co. v. Trinity Aviation LLC*, 2020-Ohio-1470, 153 N.E.3d 889, ¶ 20 (1st Dist.).

"An 'offer' is defined as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Reedy*, 143 Ohio App. 3d at 521 (quoting *Garrison v. Daytonian Hotel*, 105 Ohio App. 3d 322, 325, 663 N.E.2d 1316 (2nd Dist. 1995)). "[A]rbitration agreements under the FAA need to be written . . . ."

---

[1] "In determining whether the parties agreed to arbitrate under the first prong of the *Stout* test, the Court must apply state law of contract formation." *DeAngelis v. Icon Entm't Grp., Inc.*, 364 F. Supp. 3d 787, 792 (S.D. Ohio 2019) (Marbley, J.). The Policy provides that the law of the state where Ms. Mester works will govern any disputes arising under the agreement.

6

*Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) (citation omitted).

Here, a written offer was made. The e-mail sent to Ms. Mester stated "arbitration will be the sole, exclusive, and final remedy with respect to claims covered under FAIR," and that "[Ms. Mester's] continued employment after January 1, 2016, which is the effective date of the program, and/or the mutuality of the obligations for [Ms. Mester] and the Company under this program will constitute consideration for [Ms. Mester's] rights and obligations under FAIR . . . ." (ECF Nos. 5-1, 10-1.) Furthermore, Ms. Mester's COBE training stated that she was being "asked to acknowledge and agree, through [her] COBE affirmations, to resolve [her] employment-related disagreements with the company pursuant to the company's alternative dispute resolution program, called F.A.I.R. (Fast and Impartial Resolution). More details about F.A.I.R. have previously been provided to you." (ECF No. 5-2, PageID 118.)

"In contract formation, '[t]he manifestation of assent by the offeree constitutes the acceptance.'" *N. Side Bank & Tr. Co.,* 2020-Ohio-1470, ¶ 20 (quoting *McSweeney v. Jackson*, 117 Ohio App.3d 623, 632, 691 N.E.2d 303 (4th Dist. 1996)). Put differently, "conduct sufficient to show agreement . . . constitutes acceptance." *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App. 3d 691, 2006-Ohio-5090, 861 N.E.2d 605, ¶ 8 (10th Dist.). The e-mail and Policy stated that Ms. Mester's continued employment equated to acceptance of the Policy. Ms. Mester's certification and completing COBE training equaled acceptance of the Policy.

7

McGraw Hill provided evidence that Ms. Mester continued to work for McGraw Hill after the e-mail and that Ms. Mester certified acceptance of the Policy via COBE in 2016-2019. (ECF Nos. 5-1, 5-2, 10-1, 10-2.) McGraw Hill therefore carried its burden that Ms. Mester accepted the offer.

Lastly, Ohio law establishes that "[a] mutual agreement by both parties to submit a claim to arbitration is sufficient consideration under Ohio law." *Uszak v. AT&T Mobility Servs., LLC*, 658 F. App'x 758, 763-64 (6th Cir. 2016) (citing *Dantz v. Am. Apple Group, LLC*, 123 F. App'x 702, 708-09 (6th Cir. 2005)). The Policy requires both McGraw Hill and Ms. Mester to give up their rights to pursue court action. (ECF Nos. 5-1, 10-1.) As such, consideration exists here.

In an effort to create a genuine dispute of material fact that could lead a rational trier of fact to find that an arbitration agreement does not exist, Ms. Mester declares only that she "does not recall receiving" the e-mail. (ECF No. 8-1, ¶ 3.) But the declaration of Michael Draher, McGraw Hill's Vice President, Risk and Compliance, establishes that the company sent Ms. Mester the e-mail and Policy. (ECF Nos. 5-1, 5-2, 10-1, 10-2.) And, she repeatedly certified her acceptance of the Policy via COBE. Such a "convenient memory lapse" is therefore insufficient to "create factual disputes that are genuine." *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 839 (6th Cir. 2021).

In sum, an arbitration agreement was formed between McGraw Hill and Ms. Mester. Additionally, all of Ms. Mester's claims fall within the scope of that contract. *J.D. Byrider*, 228 F.3d at 714.

8

### B. The Court will Stay This Action.

McGraw Hill asks the Court to dismiss the case or to stay the matter pending arbitration. Section 3 of the FAA states: "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "*shall* on application of one of the parties *stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement[.]" 9 U.S.C. § 3 (emphasis added). Recent Sixth Circuit caselaw makes clear that Section 3's use of "shall" requires the Court to stay the case so that is what the Court will do. *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, No. 20-2112, -- F. 4th --, 2021 WL 5755304, at *2–5 (6th Cir. Dec. 3, 2021). *But see Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. June 11, 2021) (noting circuit split while recognizing district courts have discretion as to stay or dismissal when all claims are arbitrable and no gateway issues are present).

### C. The Court will not Award Attorney's Fees and Costs.

McGraw Hill seeks the attorney's fees and costs it incurred in filing the Motion, noting only that it unsuccessfully tried to resolve the matter by offering to treat the Complaint as step one of the Policy.  (ECF No. 5, PageID 34-35.) McGraw Hill cites no authority for its ask in violation of S.D. Ohio Civ. R. 7.2 and its request is therefore **DENIED**.

### IV. CONCLUSION

The Court **GRANTS** the Motion to Compel Arbitration (ECF No. 5).

The case is **STAYED** pending completion of arbitration. Counsel shall jointly file with the Court a status report every six months during the stay indicating the status of the arbitration.

**IT IS SO ORDERED**.

<u>s/Sarah D. Morrison</u>
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**